Landauer and others, Respondents, vs. Vietor and others, Interveners, etc., Appellants.

*September 24 — October 11, 1887.*

*Assignment for benefit of creditors: Attachment, traverse of affidavit for: Fraudulent conveyance.*

1. Attachment suits against insolvent debtors, instituted by *bona fide* creditors, in which a large share of their property was attached and sold, although commenced by the advice and instigation of such debtors, and followed by an action between themselves for the dissolution of their partnership and appointment of a receiver of their remaining property, *held,* not to constitute a voluntary assignment for the benefit of creditors, so as to render the attachments void as giving preferences.

AUGUST TERM, 1887.                    435

Landauer and others vs. Vietor and others, Interveners, etc.

2. The right to traverse affidavits for attachment is given by law only to the attachment debtors, and cannot be permitted to intervening creditors.

3. For a failing or insolvent debtor to prefer one of his creditors to the exclusion of others is not necessarily fraudulent or unlawful, unless it is done by a voluntary assignment for the benefit of creditors, or within sixty days prior to the making of such an assignment.

APPEAL from the Circuit Court for *Milwaukee* County.

On November 1, 1886, four suits were commenced in the circuit court for Milwaukee county, against Louis Abraham and Martin Rukeyser, copartners under the firm name of L. Abraham & Co., by the Merchants' Exchange Bank, the respondents *Landauer* and *Michelbacher*, Daniel Nast, and Max Schiller, respectively, on demands against that firm amounting in all to about $20,000. A writ of attachment was issued in each of these cases, which, with the proper affidavit annexed thereto, was placed in the hands of the sheriff, and by him levied upon a stock of clothing in the store of the debtor firm.

November 2, 1886, the appellants, *George F. Vietor* and others, brought an action in the same court against the same firm, and sued out a writ of attachment therein, to which a proper affidavit was annexed, which was also placed in the hands of the sheriff for service, and was by him levied upon the same stock of goods, subject to the prior attachments. No answer was interposed in either of these actions; neither was either of the affidavits annexed to such attachments traversed.

November 23, 1886, judgment was duly entered in each of the four first-mentioned actions, and executions were issued thereon, and delivered to the sheriff, who levied the same upon the stock of goods so attached. December 15, 1886, the sheriff sold the property so levied upon for $16,000. December 20, 1886, judgment was entered in the appellants' action against Abraham and Rukeyser for $998.23, and execution

thereon issued to the sheriff. December 30, 1886, the sheriff returned to the execution in the action of the respondents *Landauer* and *Michelbacher* that, by the sale of the property levied upon, he had made the sum of $1,275.86, besides his fees and costs. Pursuant to an order of court dated December 27th, he paid that sum into court.

Thereupon the appellants filed their petition in the respondents' action, praying among other things, that they be allowed to traverse the affidavits for attachments in the four suits first above mentioned; also that issue be awarded to try the legality and validity of those attachments, and the question of the priority of their respective liens upon the attached property, or the proceeds of the sale thereof, as against the lien of the appellants, and as to who is entitled to be paid the money arising from the sale of such property, and whether the same should not be paid to the appellants.

The petition sets forth the facts above stated, and alleges that the proceedings in the four attachment suits were fraudulently instigated by the members of the debtor firm, Abraham and Rukeyser, for the purpose of giving the attaching creditors unlawful preference over the petitioners and other creditors of the firm; that the property so attached constituted all the property and effects of the firm so far as visible or known; that Abraham and Rukeyser undertook thereby to make a voluntary assignment for the benefit of such attaching creditors; that on and before November 1, 1886, such debtors were insolvent; that besides the attaching creditors they were indebted to various other parties, including the petitioners, to the amount of about $40,000, which indebtedness mostly matured November 1, 1886; that, for the purpose of giving the unjust preference above mentioned, Abraham and Rukeyser caused the papers in the several attachment suits first above mentioned to be prepared, and notified said Exchange Bank to take proceedings to attach their property as aforesaid, and such papers were

signed and sworn to by the plaintiffs, respectively, and by an attorney nominally acting on their behalf, all of which was done at the request of the debtors, and in their behalf.

The petition also contains the following averments: "That said defendants collusively, illegally, and fraudulently, and with the intent to deprive the other creditors, including said petitioners, from obtaining the payment of their just claims, or any security therefor, caused the said proceedings to be instituted and carried on against themselves by attachment for the benefit of said bank, said *Landauer et al.*, said Nast, and said Schiller, and with their consent and connivance, and to give said attaching creditors an unjust and unlawful preference over their other creditors; that, as a part of the scheme of said defendants to defraud their other creditors, including said petitioners, and to give said four attaching creditors an unlawful preference, said defendants, on or before November 1, 1886, caused to be prepared by their said attorney a summons and complaint and answer for the dissolution of their copartnership, and an order and bond for the appointment of a receiver of their partnership property, ready to be signed and filed on said November 1, 1886, but which said summons, complaint, order, answer, and bond were held and not used until the 26th day of November, 1886, when the same were executed and filed in the county court of Milwaukee county, in which said suit the defendant Louis Abraham was named as plaintiff, and the defendant Martin Rukeyser was named defendant, and to which papers and proceedings in said suit for receiver reference is hereby made; that said suit was and is collusive, and a fraud on the creditors of said defendants."

An order to show cause why the prayer of the petition should not be granted, based upon all the records and papers in all the above-mentioned actions, was made and served. On the hearing of such order the respondents filed an affidavit denying that their attachment was fraudulent,

or procured, or suffered to be made, by the debtors, and denying, also, all allegations of fraud, collusion, or fraudulent intent on the part of the respondents. The court thereupon made an order denying the petition of the appellants, and directing that the sheriff or clerk pay to the respondents the amount realized on the execution in their action. From this order the petitioners, *Vietor* and others, appeal to this court.

For the appellants there was a brief by *Markham & Noyes,* and oral argument by *Mr. Noyes.* Among other things, they argued that the four attachment suits, and the suit for dissolution of the partnership, constituted a voluntary assignment, giving preferences to the attachment creditors, and therefore void. *Winner v. Hoyt,* 66 Wis. 239; *First Nat. Bank v. Knowles,* 67 id. 373; *Backhaus v. Sleeper,* 66 id. 68; *Preston v. Spaulding,* 120 Ill. 208. The practice adopted in this case to contest the validity of the prior attachment liens was a proper one, notice having been given to the sheriff not to pay over the money in his hands. *McDonald v. Allen,* 37 Wis. 108; *Allen v. Beekman,* 42 id. 185; *Nassauer v. Techner,* 65 id. 388; *Breslauer v. Geilfuss,* id. 377; *Meissner v. Meissner,* 68 id. 336; *Hawes v. Clement,* 64 id. 152; Drake on Attachments, sec. 275; *Downs v. Fuller,* 2 Metc. 135; *Bridenbecker v. Mason,* 16 How. Pr. 203; *Reed v. Ennis,* 4 Abb. Pr. 393; *Inman v. Mead,* 97 Mass. 310; *Rice v. Wolff,* 65 Wis. 1–5. The petitioners should have been allowed to traverse the attachments. *Howitt v. Blodgett,* 61 Wis. 381; *Keith v. Armstrong,* 65 id. 227.

For the respondents there was a brief by *Lindley Collins,* and oral argument by *F. C. Winkler.*

Lyon, J. The appellants intervened in the attachment suit of the respondents *Landauer* and *Michelbacher* alone, for the purpose of obtaining the money made by the sheriff

upon their execution. No relief is demanded against the other attaching creditors, and they are strangers to this proceeding. For this reason certain averments in the petition, affecting them alone, have been omitted from the foregoing statement of facts.

The petition is prolific in general charges of fraud and collusion, but when fairly analyzed it amounts to nothing more than a charge that the debtors, Abraham and Rukeyser, instigated and caused to be commenced the four attachment suits of November 1, 1886, and that, being insolvent, they did so for the purpose of preferring the attaching creditors at the expense of their other creditors; and that, by mutual consent, an action was soon after instituted by one partner against the other for a dissolution of the copartnership, and the appointment of a receiver therein. There is no charge in the petition that the claims of the attaching creditors were not honest claims against the debtors, or that there was any secret trust created in favor of the debtors. The general charges of fraud and collusion in the petition have no significance, unless supported by the facts stated therein. As was said by this court in *Sup'rs Kewaunee Co. v. Decker*, 30 Wis. 634 (quoted and approved in *Riley v. Riley*, 34 id. 372): "A general charge that a party acted fraudulently, falsely, or wrongfully, or that he made fraudulent representations or statements, amounts to nothing; there must be a specification of facts to justify it. It is at most but a mere inferential statement, too vague and uncertain to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it, or to inform the court, whose duty it is to declare the law arising upon the facts."

It is not necessarily fraudulent or unlawful for an insolvent debtor, or one in failing circumstances, to prefer one or more of his creditors to the exclusion of others, unless it be done in a voluntary assignment for the benefit of creditors,

or within sixty days before the making of such an assignment. In *Lord v. Devendorf*, 54 Wis. 491, this court had under consideration a voluntary assignment by an insolvent for the benefit of creditors, in which a portion of the creditors of the assignor were preferred. This was before the enactment of ch. 349, Laws of 1883, prohibiting such preferences. In the opinion by Mr. Justice CASSODAY in that case it is said: "In the absence of any statute to the contrary, there can be no question but that an insolvent debtor may pay one creditor in money or property in preference to another. *Spring v. S. C. Ins. Co.* 8 Wheat. 268. This right of the debtor to prefer results from the absolute ownership of property. *Brashear v. West*, 7 Pet. 608. This absolute ownership implies the absolute right of disposition. In the absence of the bankrupt law, or any statute to the contrary, there can be no doubt but that an insolvent debtor, when assigning his property for the benefit of his creditors, may, in good faith, prefer one or more to others."

If the demands of the preferred creditors are honest, and there is no reservation or trust in favor of the debtor, the preferences are not fraudulent, notwithstanding the attachment suits may have been instigated or commenced by the debtors, if they were afterwards adopted or ratified by the creditors named in the writs. *Bayley v. Bryant*, 24 Pick. 198. In this case, however, although the debtors may have advised and instigated the suits, they were actually commenced by the attaching creditors. Hence, in the present case, the attachment of the respondents is valid, and they are entitled to the money awarded them by the order of the court from which this appeal is taken, unless the acts of the debtors charged in the petition, as before stated, amount to a voluntary assignment for the benefit of their creditors.

Manifestly, the petition was drawn with a view of making a case within the rule of *Winner v. Hoyt*, 66 Wis. 239. In that

case " chattel mortgages and assignments of accounts, trans-
ferring the entire property of insolvent debtors to certain of
their creditors, with the intent that one of such creditors,
for himself, and as agent and trustee for the others, should
take immediate possession, and convert such property into
money; and divide the same *pro rata* among such favored
creditors, are *held* to have been, in effect, a general assign-
ment with preferences, and void as to the other creditors."
That case, and many others in this court and elsewhere,
establish the right of a debtor in failing circumstances to
prefer certain of his creditors by sale of property by chattel
mortgage, by confession of judgment, or in any other
manner, except by voluntary assignment for the benefit
of creditors, or within sixty days before such an assign-
ment. In *Winner v. Hoyt*, Mr. Justice TAYLOR dissented
from the judgment, holding that the transactions in that
case did not amount to a voluntary assignment for the
benefit of creditors, and hence that the preferences created
by the debtors were valid. On all other questions the
members of the court were agreed.

In the present case, the debtors did not dispose of all
their property by consenting to the attachment suits;
neither was it all seized by virtue of such attachments, or
sold upon the executions issued upon the judgments there-
after obtained. The record in the action for a dissolution
of the partnership shows that there still remained a large
amount of outstanding obligations due the debtors, not dis-
posed of by them, and not interfered with by the attaching
creditors, but which remained subject to be applied by the
court as required by law. Neither was any trustee for the
parties provided for or appointed. In these material par-
ticulars the case differs from that of *Winner v. Hoyt*, and
they take it out of the rule of that case.

We conclude, therefore, that, upon the allegations of the
petition, the preferences created in favor of the attaching

creditors were without fraud, and did not amount to a voluntary assignment for the benefit of creditors, and hence that the same were valid. It is scarcely necessary to add that the appellants had no right to traverse the affidavits for attachments in the other suits. That is a privilege given by statute to the attachment debtors alone. *Howitt v. Blodgett*, 61 Wis. 376; *Rice v. Wolff*, 65 id. 1; *Keith v. Armstrong*, id. 225.

The petition herein is in the nature of a pleading, and, because it fails to state or suggest facts showing that the petitioners have a paramount right to the money in controversy, we think the court did not err in denying the prayer of the petition, and awarding such money to the respondents.

*By the Court.*— The order appealed from is affirmed.