GOULD, Appellant, vs. KILLEN, Respondent.

*January 11—January 28, 1913.*

*Tax titles: Relief against tax deeds: Constructive payment of tax: Fault of town treasurer: Evidence: Degree of proof required: Laches: County treasurer as agent of owner: Subsequent sale by him: Mistake of agent: Validity of tax deed: Clerical error in recitals.*

1. A former owner of lands who seeks to recover them from the grantee in a tax deed on the ground that he made a good-faith attempt to pay the taxes for which they were sold but was prevented from doing so by fault of the town treasurer, is bound to establish his case only by a fair preponderance of the

testimony, and need not prove it by "clear and satisfactory" evidence.

2. Upon the evidence in this case—showing, among other things, that the owner of lands situate in two or more townships sent a list of them to an agent, requesting him to pay the taxes; that such agent copied from the list the descriptions in each township separately and sent them to the proper town treasurer; that the lands in question were described in the tax receipt and stub but with no tax extended against the same, it being explained to the agent and by him to his principal that the tax on those descriptions had been paid by another person; and that no other explanation of the action of the town treasurer in writing the descriptions in the stub and receipt was given upon the trial—it is *held* that there was a constructive payment of the tax which would defeat the tax deed.

8. Long delay in such a case before commencing the action would not defeat a recovery, where in the interval there was correspondence and negotiation between the parties relative to the matter, and defendant was fully informed of the plaintiff's claims.

4. The mere fact that the county treasurer had acted as agent for plaintiff in paying the taxes and that afterwards he acted officially in selling the lands in question as delinquent, did not affect plaintiff's rights, nor should it be construed as an admission on the part of such agent that the tax was unpaid.

5. Where the failure of an attempt to pay taxes on lands was caused by a mistake of the owner's agent, not of the town treasurer, there was no constructive payment.

6. A tax deed which recites that the grantee named therein, "assignee of ——, has deposited," etc., and further that the lands conveyed were "sold to said" grantee, is not void on the ground that such recitals are contradictory, the failure to strike out the words "assignee of" from the printed form being a mere clerical error.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action of ejectment involving the west half of the southwest quarter of section 19, township 37 north, of range 12 east, and the northwest quarter of the southwest quarter, and the southeast quarter of the southeast quarter, of section 5, township 32 north, of range 12 east. The defendant claims title under a tax deed issued on account of the tax

of 1891, sale of 1892. At the time of the levy of the taxes in question the first two descriptions were located in the town of Langlade and the last two descriptions in the town of Price. It is conceded that the taxes on these lands were not paid. The plaintiff sought relief against the tax deed on the ground that he had made a good-faith attempt to pay the taxes on said lands and that he was prevented from doing so by misinformation given by the town treasurers of the towns in which the lands were situated. The trial court found, among other things, "that by some mistake or omission, the exact nature of which is not disclosed by the evidence, the taxes on the lands described in the complaint were not paid," and that said lands were returned as delinquent and sold and tax-deeded to the defendant. Further, "that the plaintiff has failed to establish by clear and satisfactory evidence that he was prevented from paying the taxes assessed on the lands described in the complaint for the year 1891 by the mistake, neglect, or fraud of the town treasurers of the towns of Price and Langlade or either of them, but the evidence tends to show that the failure to pay the taxes on said lands was caused by the mistake or neglect of the servants or agents upon whom the plaintiff relied to pay the same." As conclusions of law the court found that the defendant's tax deed was valid; that plaintiff had no right, title, or interest in the lands; and that defendant was entitled to judgment dismissing the complaint. From a judgment entered in accordance with these findings and conclusions plaintiff appeals.

For the appellant there was a brief by *Goodrick & Goodrick,* and oral argument by *A. B. Goodrick.*

For the respondent the cause was submitted on the brief of *Geo. W. Latta.*

BARNES, J. The law applicable to the case has been settled by the following decisions in this court: *Gould v. Sullivan,* 84 Wis. 659, 54 N. W. 1013; *Bray & Choate L. Co. v.*

*Newman,* 92 Wis. 271, 65 N. W. 494; *Nelson v. Churchill,* 117 Wis. 10, 93 N. W. 799; *Menasha W. W. Co. v. Thayer,* 150 Wis. 611, 137 N. W. 750.

The only serious question in the case is whether the material findings of fact made by the trial court are against the clear preponderance of the testimony. There is not much dispute in the evidence. That relating to the two descriptions in section 5, township 32 north, of range 12 east, differs in a number of important respects from the evidence in relation to the west half of the southwest quarter of section 19, township 33 north, of range 12 east. It will be observed from the findings that the circuit judge found for the defendant because the evidence did not clearly and satisfactorily show that an attempted payment of the tax was made which was defeated by the action of the town treasurers. The plaintiff was bound to establish his case only by a fair preponderance of the testimony, and the trial court applied an erroneous rule in reaching its conclusion on the facts. The error may not be material, but it places this court in the position of not knowing what findings the circuit judge would have made had he been of the opinion that the plaintiff was entitled to recover if he established his case by a preponderance of the evidence only.

The evidence in reference to the two forty-acre tracts in section 5 established these facts: The plaintiff made a correct list of all the lands which he owned in Langlade county and seasonably sent the same to F. P. Kennedy, who was then county treasurer of Langlade county, and requested Kennedy to act as his agent in paying the taxes to the town treasurers of the towns in which the lands were situated. The list included lands in three towns in Langlade county, and was prepared in such a way that it was necessary for Kennedy to make a list for each town treasurer from the list furnished by plaintiff. The plaintiff kept a letter-press copy of the list which he sent to Kennedy. Kennedy kept no copies of the

lists which he sent to the town treasurers and none were produced. Kennedy in substance testified that from the list sent him he made a copy for the town treasurer of the town of Price, in which these lands were situated, and sent it to him. He further testified that he was informed by the town treasurer that the tax on the two descriptions in question had been paid by one Upham. He paid the amount requested by the town treasurer and sent the receipt to the plaintiff. This receipt was lost at the time of the trial, but the stub receipt was offered in evidence. It showed that the two descriptions in question had been written into the stub receipt among the other descriptions, but that no tax had been carried out against the same, and, further, that there had been a partial erasure of these two descriptions at some time after they were written into the stub receipt. One Wright, an employee of the plaintiff, who looked after his tax matters to some extent, testified that one of the two lost tax receipts contained descriptions against which no tax was carried out. Plaintiff corroborated this testimony in a measure. Kennedy informed the plaintiff by letter that the reason why the taxes were not paid on these two descriptions was that the same had been paid by Upham. This was substantially the case made by the plaintiff.

No evidence was offered which disputed any of the foregoing facts. The town treasurer, Hutchinson, was called as a witness, but he had no recollection of the transaction and was unable to offer any explanation as to why these two descriptions were inserted in the stub receipt and afterwards partially erased. There is in support of the judgment the presumption that public officers will properly perform their duties, although it is often a violent one. There is the further fact that there was a long delay on the part of the plaintiff in commencing this action after he knew of the existence of the tax deed. Notwithstanding these considerations, it is established beyond dispute that *Gould* sent a correct list of his

lands to Kennedy and that he desired to pay the taxes thereon. It is also established that Kennedy meant to make a correct copy of such list and to pay the taxes on the lands described therein for his principal, and that for that very purpose he furnished the town treasurer a list which he supposed to be correct. If this list was incorrect the query arises: How did the town treasurer come to insert the two descriptions involved in the stub receipt and in the tax receipt? There is no pretense that in making out the tax receipt he either had or used any information other than the list furnished by Kennedy. No explanation of the town treasurer's action in this regard is either made or attempted by the respondent. Such action was incompatible with the idea that Mr. Kennedy did not furnish a correct list, and quite conclusively demonstrates that he did. He had no other purpose or object in furnishing the list than to pay the taxes on the lands included therein. It is easy enough to account for the partial erasure of the descriptions from the stub receipt. The conclusion seems to be well nigh irresistible that he would have paid such taxes had he not received information from the treasurer that the taxes on those two descriptions had already been paid by mistake or error of some one. The stub receipt furnishes the strongest kind of corroboration of the letter written by Kennedy to the plaintiff in which he stated that the taxes had been paid on these two descriptions.

It is true that the lands were returned delinquent and advertised for sale, and no doubt true that they were again advertised before a tax deed was taken thereon, and that *Mr. Gould* rather complacently accepted the situation, knowing that he had not paid his taxes, and did not take any steps to inform himself. This consideration, however, was urged upon the court in the case of *Gould v. Sullivan,* 84 Wis. 659, 54 N. W. 1013, and was rejected, and it was held that where a taxpayer furnished a list of his lands to the town treasurer and sought information as to the amount of tax assessed

against the same so that he could pay his taxes, and the treasurer erroneously informed him that there was no tax to be paid, the landowner, by showing these facts, might defeat a tax deed issued on account of such taxes, and that the three-year statute of limitations had no application to such a case. The plaintiff waited a long time before beginning his action, and considerable correspondence and negotiations took place between the parties with a view of getting the matter adjusted. But the defendant was advised that the plaintiff claimed that the tax deed was void for the reason stated and that he also claimed to be the owner of the lands. Defendant's title was called in question, and he knew that he had no title if plaintiff was correct in his contentions. Under these circumstances it is not very apparent why the plaintiff was under any more obligation to begin an action to settle the title to the land than was the defendant. Either might bring suit to test the question, and it is not claimed that there was any laches on the part of the plaintiff that would defeat his action. We think the court did not attach sufficient significance to the fact that the descriptions in question were written into the stub receipt and that their presence there could not be accounted for on any rational theory except that they were included in the list furnished to the town treasurer by Kennedy.

It is urged in behalf of the respondent that Kennedy, being county treasurer, was the party who made the sale of these lands after they were returned delinquent, and that this was in the nature of an admission on his part that the taxes on the lands had not in fact been paid. The county treasurer makes up his delinquent list from the delinquent rolls returned by the town treasurers. It is not an unusual thing in northern counties at the time of a tax sale to have several thousand descriptions of land advertised for sale on account of delinquent taxes. It would be expecting a good deal of a county treasurer, who apparently was acting as the agent of landowners in the payment of taxes, to expect him

to keep descriptions in mind when he came to make up his delinquent list.

We conclude that as to the northwest quarter of the southwest quarter and the southeast quarter of the southeast quarter of section 5, township 32 north, of range 12 east, the plaintiff is entitled to the relief prayed for in the complaint, on the condition that he pay to the defendant the amount for which the lands were sold, with interest and such other legal charges as are usually exacted as a condition of setting aside tax deeds where the taxes have not in fact been paid.

As to the south half of the southwest quarter of section 19, town 33, range 12, we think the decision of the court is clearly right. There was nothing in the stub receipt to indicate that the town treasurer was furnished with a list containing these descriptions. As a matter of fact it quite clearly appears that the original list furnished to the town treasurer of the town of Langlade, in which these lands are situated, was not correctly made out, inasmuch as the evidence indicates that the whole south half of section 19 was omitted therefrom. We assume it to be true that Mr. Kennedy wrote to the plaintiff to the effect that the taxes on these two descriptions had been paid by one "J. Komley." The town treasurer in this case, however, very positively denied that these two descriptions were included in any list which was furnished him. He might easily be mistaken about this, but he further testified that he never knew and never heard of a man named "J. Komley," and that no such person paid any taxes in the town of Langlade for the year 1891. If this is true, it is wholly improbable that the town treasurer informed Mr. Kennedy that such a payment was made. This evidence is supplemented by that of the deputy county clerk, who testified that he examined the tax roll and the stub receipt book for the town of Langlade for this year and that it did not appear therefrom that Komley paid any taxes in the town for such year. This witness further testified that

he also examined the tax roll for the town of Price for such year and that a man named J. Komley did pay the taxes on the south half of the southwest quarter of section 19, township 32 north, of range 12 east. This evidence quite clearly demonstrates that Mr. Kennedy must have made his inquiry in reference to these descriptions of the town treasurer of the town of Price, in which section 19, township 32, range 12, is located, and not of the town treasurer of the town of Langlade, which included township 33 north, of range 12 east, and that the mistake was that of Kennedy and not of the town treasurer of the town of Langlade.

The bill of exceptions as returned to this court shows that Kennedy informed *Gould* as a matter of fact that the taxes on the south half of the southwest quarter of section 19, township 32, range 12, were paid by J. Komley. It was stated on the oral argument that this was a clerical mistake, and we have treated the case on the supposition that it was. It will be observed that the two descriptions involved in the town of Langlade are not the south half of the southwest quarter of section 19, but the west half of the southwest quarter of that section. There is practically no testimony tending to show that any misinformation was given in reference to the northwest quarter of the southwest quarter of this section.

The tax deed in question contains the recital that "Whereas, *W. H. Killen,* assignee of ——, has deposited," etc., and the further recital that the lands involved were sold on May 17, 1892, "to the said *W. H. Killen.*" It is argued that these two recitals are inconsistent and contradictory, inasmuch as one shows that *Mr. Killen* was the purchaser at the sale, while the other shows that he was the assignee of the purchaser, and that the deed is therefore void under the decisions in *Dunbar v. Lindsay,* 119 Wis. 239, 96 N. W. 557, and *Washburn L. Co. v. C., St. P., M. & O. R. Co.* 124 Wis. 305, 102 N. W. 546.

The decisions are not in point. The deed does not show

*Mr. Killen* to be the assignee of any one. It was obviously an immaterial clerical error not to strike out the words "assignee of" from the statutory form of deed which was used. The second recital shows that *Killen* purchased the lands at the tax sale and the first one does not contradict it. Tax deeds should not be held void on any such frivolous grounds as are here urged. *Laughlin v. Kieper,* 125 Wis. 161, 103 N. W. 264; *Hunt v. Stinson,* 101 Wis. 556, 77 N. W. 901; *Washburn L. Co. v. C., St. P., M. & O. R. Co., supra; Hotson v. Wetherby,* 88 Wis. 324, 60 N. W. 423.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.